# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**OMAR WESLEY, by next friend BRENDA WESLEY**
        **Plaintiff,**

        **v.**                                              **Case No. 19-CV-0918**

**ARMOR CORRECTIONAL HEALTH SERVICES, INC., et al.,**
        **Defendants.**

_____

## DECISION AND ORDER

Omar Wesley, by his next friend Brenda Wesley, filed a complaint alleging that employees and officials of the Milwaukee Criminal Justice Facility ("CJF"), its contracted medical service provider, and related community service providers, all failed to provide him with a needed antipsychotic drug during a period when they were responsible for his care, thus violating federal and state law. Among the claims asserted in the complaint are a *Monell* claim against Armor Correctional Health Services ("Armor"), a medical service provider contracted to provide mental health services at CJF, *see Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978), and individual capacity claims against Armor's employee, defendant Dr .Maureen White ("Dr. White"), who was director of mental health services at CJF during Wesley's confinement there. Wesley also asserts claims against Armor under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Armor and Dr. White have moved for dismissal of each of these claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    BACKGROUND

The relevant allegations of Wesley's complaint are as follows.

From June 2015 to February 2016, Wesley was confined at the Mental Health Complex in Milwaukee County. Wesley was diagnosed with schizoaffective disorder, antisocial personality disorder, and cocaine abuse. In December, 2015, while confined at the Mental Health Complex, Wesley began taking the drug clozapine for his schizophrenia. Clozapine is generally prescribed as a last resort, after all other available medication regimens have failed—and, indeed, it was prescribed for Wesley because other drugs had failed to work. Medical professionals understand that once treatment with clozapine has started, it is important not to abruptly stop treatment, because abrupt cessation of clozapine treatment can cause rapid decompensation.

Wesley's condition improved with the clozapine treatment, and in February 2016 it was determined he was competent and could be moved from the Mental Health Complex. He was first moved to the Milwaukee House of Corrections, and then, in April 2016, to CJF, where Armor was responsible for providing his medical care. The Milwaukee Country Circuit Court then entered an order that Wesley should be assessed to determine whether he could be released to community supervision. Wisconsin Community Services, Inc. ("WCS") contracts with the Milwaukee County Department of Health and Human Services to provide supervision services for persons who are out of confinement and in the community. WCS assessed Wesley. On June 6, 2016, the circuit court determined that Wesley should be supervised in the community.

Armor and WCS began planning for Wesley's release. On June 17, 2016, Armor faxed WCS a list of Wesley's medications and prescriptions, including clozapine. The list showed that Wesley's prescription for clozapine would end on June 24, 2016. Armor failed to obtain a prescription for clozapine for Wesley after June 24, 2016.

Wesley was released to WCS on June 28, 2016. He had not taken clozapine since June 24. By June 29, WCS employee Tewana Marshall and others responsible for Wesley's supervision noticed increased symptoms of mental illness and delusional thinking. By June 29, Marshall spoke with Armor employee and CJF mental health director Dr. White about the wrongful discontinuation of Wesley's clozapine prescription. Dr. White told Marshall that Armor's failure to enter information on a website caused the prescription for clozapine to lapse.

Though WCS was aware that Wesley was decompensating without clozapine, a prescription for clozapine for Wesley was not filled until July 8, 2016. Wesley took the medication and became severely ill. On July 9, Wesley did not take the medication because he was severely ill as a result of the cessation and reintroduction of clozapine. On July 10, 11, 12 and 13, he agreed to take clozapine.

On July 13, Wesley was arrested and taken back to CJF for missing doses of clozapine. When Wesley arrived at CJF, he had clozapine with him. However, unidentified Armor employees prohibited Wesley from keeping and taking his required clozapine.

On July 13, a nurse practitioner employed by Armor ordered clozapine for Wesley. The clozapine was available and could have been provided to Wesley beginning July 14. However, Armor and its employees failed to provide clozapine to Wesley from July 14 to July 20 of 2016. Instead, during that time, Wesley was placed in disciplinary confinement because of his mental health symptoms resulting from the abrupt discontinuation of clozapine. The complaint alleges that CJF has a policy and practice of confining inmates suffering from acute mental disorders to disciplinary cells, and that CJF also has a policy

and practice of not providing medication to inmates suffering from acute mental disorders in disciplinary cells.

The complaint alleges that Wesley was injured as a result of the abrupt cessation and reintroduction of clozapine and as a result of his confinement in a disciplinary cell.

## II.    12(b)6 STANDARD

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In construing a plaintiff's complaint, I assume that all factual allegations are true but disregard statements that are conclusory. *Iqbal*, 556 U.S. at 678. Section 1983 claims are subject to the same plausibility pleading standard as other civil causes of action. *Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018).[1]

---

[1] Plaintiff's brief in response to Armor's motion to dismiss relies on outdated statements of the Rule 12(b)(6) standard, dating from before *Twombly* and *Iqbal. See* ECF No. 55 at 6-8 (citing the "no set of facts" pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) and abrogated in *Twombly*, 550 U.S. at 562-63). On the basis of this and other pre-*Twombly* authority, plaintiff argues throughout that conclusory allegations are sufficient to withstand Armor's 12(b)(6) motion. *See, e.g.,* ECF No. 55 at 8 (citing a Seventh Circuit case from 2000 for the principle that "conclusory language is sufficient to put municipal defendants on notice"); *id.* at 12 (arguing that conclusory allegations are sufficient "under the notice pleading regime" and citing to a 2002 7th Circuit case).

### III.    MONELL CLAIM AGAINST ARMOR

For purposes of § 1983, a private corporation like Armor acting under color of state law is treated as a municipal entity. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n. 6 (7th Cir. 2002). In *Monell*, the Supreme Court established that a municipality can be held liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694. To state a *Monell* claim against Armor, the plaintiff must plead factual content that would allow me to draw the reasonable inference that (1) he has suffered the deprivation of a constitutional right; and (2) that an official custom or policy of Armor caused that deprivation. *Monell*, 436 U.S. at 694-95. The Seventh Circuit recognizes three general categories of municipal conduct that can constitute a "policy" for *Monell* purposes: (1) an express policy, statement, ordinance or regulation that, when enforced, causes a constitutional deprivation; (2) an unconstitutional practice so permanent and well-settled as to constitute a "custom or usage" with force of law; and (3) the decision of a municipal policymaker with final policymaking authority in the area at issue. See *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000); *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Wesley's allegations that he was deprived of a needed psychiatric drug while in custody support the inference that he was deprived of a constitutional right, in satisfaction of the first *Monell* element. However, Wesley has not pleaded sufficient factual content to support the inference that an Armor policy or custom caused that deprivation.

Regarding the deprivation that occurred from June 24 to June 29, Wesley's factual allegations are only that his prescription lapsed and was not refilled, and that during a

June 29 phone call Dr. White indicated that the reason for the lapsed prescription had been a failure to enter information into a website. He makes a conclusory allegation that Dr. White knew earlier of the prescription lapse, but without additional factual content to substantiate that assertion I must disregard it. I cannot infer from these allegations that Armor had an express policy of allowing prescriptions to lapse without refill, or that it had a widespread practice of allowing prescriptions to lapse without refill, or that an Armor policymaker had decided to allow the prescription to lapse without refill. More factual allegations are necessary to make it plausible and not just possible that the failure to refill the prescription was a result of policy rather than simple error.

Regarding the deprivation that occurred from July 14 to July 20, Wesley alleges that it happened because CJF had policies of confining people suffering from acute mental disorders in disciplinary cells and of not providing medication to people confined in disciplinary cells. ECF # 1, ¶¶ 65-66. The complaint alleges that these were "de facto" CJF policies, and that Dr. White had personal knowledge of these de facto policies. *Id.*, ¶ 82. However, the complaint does not provide enough factual content to support the inference that such policies existed. *See Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010)("The plaintiff must demonstrate that there is a policy at issue rather than a random event.") Perhaps the most common method of factually supporting the inference that a de facto policy existed is to include in the complaint allegations of other, similar incidents. *See id.* Wesley's complaint includes no allegations that CJF confined other individuals suffering from mental disorders in disciplinary cells or withheld medication from other individuals confined in such cells. Nor does the complaint document multiple instances when CJF staff elected to confine Mr. Wesley in a

6

disciplinary cell because of his mental disorder or elected to withhold medication because he was confined in a disciplinary cell, which would also support the inference that staff were acting pursuant to a de facto policy. *Cf. Stockton v. Milwaukee County*, 18-CV-0758 (E.D. Wis., Mar. 26, 2019)(Multiple alleged instances of jail staff being notified of and ignoring a single plaintiff's worsening medical symptoms were sufficient to support an inference that the jail had a de facto policy of ignoring such symptoms.). Nor does the complaint allege any other facts suggesting that the decision to confine Mr. Wesley and deprive him of medication was pursuant to a de facto policy. *Cf.  White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016)(Complaint that identified only single instance of constitutional violation by police officer nevertheless stated *Monell* claim because the complaint also included the standard printed police department form used by the officer, which was direct evidence tending to show that the officer's conduct was consistent with a broader department practice.). In short, there's nothing here to raise the existence of a de facto policy out of the realm of speculation.

Wesley also argues that his complaint states a *Monell* claim against Armor for the July 14-20 clozapine deprivation on the alternative theory that it resulted from a decision by Dr. White, whom Wesley alleges had final policymaking authority regarding mental health care at CJF. But again, the allegations in the complaint don't add up to plausibly state such a claim. The complaint does not allege that Dr. White personally directed that Wesley be placed in disciplinary confinement or deprived of clozapine. Instead, it alleges that Dr. White knew that Wesley was being confined and deprived of clozapine during this period and did not intervene.  No concrete assertions lend substance to this conclusory allegation; Dr. White wasn't directly involved in Wesley's treatment, and there's no

indication when or how she might have learned about his confinement and clozapine deprivation.

I conclude, therefore, that the allegations in the complaint are insufficient to plausibly state a *Monell* claim against Armor.

## IV. INDIVIDUAL CAPACITY CLAIMS AGAINST MAUREEN WHITE

Wesley's complaint also includes an individual capacity § 1983 claim against Dr. White; he alleges that she was "deliberately indifferent to his acute mental illness when [she] failed to monitor Wesley and provide clozapine to Wesley on and after July 14, 2016." ECF # 1, ¶ 74. A state official acts with deliberate indifference to an inmate's medical needs when the official "knows of and disregards an excessive risk to inmate health or safety," or when "the official is both aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he . . . draws the inference." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994), *cited in Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Here, the complaint does not contain factual allegations that plausibly support the inference that Dr. White knew or inferred that Wesley had been placed in disciplinary confinement and deprived of clozapine. The complaint includes only a conclusory allegation that Dr. White had such knowledge. Thus, the complaint does not state an actionable § 1983 claim against Dr. White.

## V. DISABILITY DISCRIMINATION CLAIMS

### a. ADA Claim against Armor

Wesley's complaint includes a claim that Armor violated Title II of the ADA, which prohibits disability-based discrimination by public utilities. In its brief in support of its motion to dismiss Wesley's disability discrimination claims, Armor argues that it is not

subject to Title II because it is not a public utility. Wesley's response brief makes no argument the Armor is subject to Title II; rather, it asserts that Armor is instead a "private entity" regulated by Title III of the ADA. ECF # 55 at 17. I will construe this response as a concession that Armor is not subject to Title II,[2] and will consider instead whether the complaint states an actionable Title III claim against Armor.

Title III's enforcement provision provides a remedy only to a person "who *is being subjected* to discrimination on the basis of disability . . . or who has reasonable grounds for believing that such person *is about to be subjected* to discrimination." *See* 42 U.S.C. § 12188(a)(1)(emphasis supplied). This language does not apply to Wesley, whose complaint concerns past events and seeks only money damages. Moreover, money damages are not available to private parties under Title III, and Wesley does not argue that he wants injunctive relief or that injunctive relief is available to him. *See Ruffin v. Rockford Memorial Hospital,* 181 Fed.Appx. 582, 585 (7th Cir. 2006). Therefore, Wesley's complaint does not state an actionable Title III claim against Armor.

*b. Section 504 of the Rehabilitation Act*

Wesley's complaint also includes a claim that Armor violated Section 504 of the Rehabilitation Act, which prohibits a recipient of federal financial assistance from discriminating against an otherwise qualified individual on the basis of disability. 29 U.S.C. § 794(a). This claim fails because the complaint does not allege that Armor is a recipient of federal funds. It does allege that Milwaukee County is a recipient of federal funds, ECF # 1, ¶ 97, and that Armor contracted with the county to provide medical care to persons

---

[2] This decision and order does not address the question whether the other defendants, including CJF, are regulated by Title II.

confined at CJF, *id.*, ¶ 10. Presumably, Wesley intends these allegations to support an inference that Armor indirectly benefits from the county's receipt of federal financial assistance. However, the Seventh Circuit has established that "coverage of the Rehabilitation Act does not follow federal aid past the intended recipient to those who merely derive a benefit of the aid or receive compensation for the services rendered pursuant to a contractual relationship." *Grzan v. Charter Hospital*, 104 F.3d 116, 120 (7th Cir. 1997)(abrogated on other grounds; see *Amundsen ex rel. Amundsen v. Wisconsin Dept of Health Services*, 721 F.3d 871, 874 (7th Cir. 2013); see also *Rose v. Cahee*, 727 F.Supp.2d 728, 737 (E.D. Wis. 2010). Thus, the complaint does not allege that Armor received federal funds in a manner sufficient to state a plausible claim against Armor under Section 504.

## VI.    CONCLUSION

**IT IS ORDERED** that Evanston Insurance Company's motions for joinder in Armor Correctional Health Services motions to dismiss (ECF Nos. 38 and 39) are **GRANTED**, as unopposed.

**IT IS FURTHER ORDERED** that, for the reasons stated above, defendants Armor Correctional Services and Maureen White's motion to dismiss the *Monell* claim against Armor and any individual capacity § 1983 claim against Dr. White (ECF No. 30) is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants Armor Correctional Health Services and Maureen White's motion to dismiss the disability discrimination claims against them (ECF No. 32) is **GRANTED.**

Dated at Milwaukee, Wisconsin, this 22nd day of November, 2019.


s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge