UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

OMAR H WESLEY,
by next friend BRENDA WESLEY,

           Plaintiff,

v.                                            Case No. 19-cv-0918-bhl

ARMOR CORRECTIONAL HEALTH
SERVICES INC, et al.,

           Defendants.

## ORDER DENYING MOTION TO VACATE ENTRY OF DEFAULT

      Clients who choose not to pay their lawyers run the risk of finding themselves in debt and without representation. The consequences can be especially severe for corporate entities because a corporation cannot appear in court *pro se*. *See 1756 W. Lake St. LLC v. Am. Chartered Bank*, 787 F.3d 383, 385 (7th Cir. 2015). In this long-pending lawsuit, Defendant Armor Correctional Health Services, Inc. (Armor) twice refused to pay its chosen counsel, and both times its lawyers moved to withdraw. On each occasion, the Court warned Armor that it risked default if it went unrepresented but allowed the company time to either resolve the payment dispute or retain replacement counsel. Armor complied in the first instance. The second time around, however, it failed to obtain counsel until weeks after the Court-ordered deadline. The Clerk, therefore, entered default. Armor now seeks to avoid the consequences of its disregard for the Court's order. Through a third set of lawyers, it asks the Court to vacate its default. Because Armor has not shown good cause to set aside the default, its motion will be denied.

## BACKGROUND

      Plaintiff Omar Wesley, by next friend Brenda Wesley, commenced this lawsuit nearly four years ago, on June 21, 2019. (ECF No. 1.) The operative complaint alleges that Armor— responsible for providing healthcare at the Milwaukee County Jail and House of Corrections—

mishandled Omar's mental health medication during his incarceration, causing him to decompensate. (ECF No. 98 ¶¶253-259.)

Armor initially retained attorneys John J. Reid and R. Fletcher Koch of Cassiday Schade LLP to defend it and its former employees. Both attorneys appeared in July 2019 and continued their representation through the pleading stage and into discovery. (ECF Nos. 27 & 29.) On December 22, 2021, however, shortly before the dispositive motion deadline, Reid and Koch moved to withdraw, asserting that Armor had failed to deliver on "agreed upon compensation for [their] services." (ECF No. 167 at 2.) The Court granted the motion in part. (ECF No. 168.) In the corresponding order, it noted that Armor was a corporation and could not appear *pro se*, and accordingly stayed the case for 30 days to allow Armor time to retain replacement counsel.. (*Id*.) The Court's Order also explicitly warned: "If replacement counsel has not appeared by [January 21, 2022], the Court will set a hearing to determine how to proceed, including whether to allow counsel to withdraw and *the potential entry of default against Armor*." (*Id.*) (emphasis added.)

Three days before the deadline, Christopher P. Riordan of von Briesen & Roper SC filed a notice of substitution and stepped in for Reid and Koch. (ECF No. 169.) Riordan then asked the Court to extend the existing discovery cutoff and dispositive motions deadlines, explaining that despite his best "efforts to get up to speed on the matter, [he was] unable to meet the current scheduling deadlines." (ECF No. 170 at 3.) Wesley agreed not to oppose the extension in exchange for additional time to respond to dispositive motions. (ECF No. 172.) On February 11, 2022, the Court granted Armor's motion, extending both the discovery and dispositive motion deadlines by 60 days and allowing Wesley extra time to respond to any motions for summary judgment. (ECF No. 173.)

Riordan continued to represent Armor and its four former employees for the next year, through dispositive motion practice. He successfully moved for summary judgment on all claims against two former Armor employees. (ECF Nos. 182 & 238.) But because the record did not support summary judgment in favor of Armor itself or two other former Armor employees, they remained in the case. (ECF No. 238 at 25.)

After resolving the dispositive motions, the Court directed the parties to meet and confer to discuss a schedule for moving the case to resolution. (ECF No. 239.) On December 8, 2022, the parties filed a joint status report, confirming they had agreed to a private mediation on February

14, 2023. (ECF No. 240.) The Court then directed the parties to file an updated status report after the mediation. (ECF No. 241.)

Less than two weeks later, on December 20, 2022, Riordan moved to withdraw, citing Armor's refusal to pay his agreed-upon fees. (ECF No. 242 at 1-2.) Feeling a bit of deja-vu and concerned about further delays in an already overripe case, the Court set a telephonic hearing on Riordan's motion for January 4, 2023. (ECF No. 243.) As it had when Armor's prior lawyers sought withdrawal, the Court's hearing notice reminded Armor that, as a corporation, it could not appear *pro se*, and thus, if Riordan were allowed to withdraw, Armor would be subject to default. (*Id*. at 1.) The Court also directed Riordan to provide a copy of the Order setting the hearing to his clients and to "appear at the conference along with a representative of Armor or replacement counsel." (*Id*. at 2.)

Wesley opposed Riordan's withdrawal. (ECF No. 244.) He emphasized that the case had been pending since 2019 and this was the second set of lawyers who had moved to withdraw based on Armor's failure to pay. (*Id*. at 1.) He also worried that further delays would jeopardize the agreed upon February 14, 2023 mediation. (*Id*. at 2.)

On January 4, 2023, the Court held a telephonic hearing on Riordan's motion to withdraw. As ordered, Riordan appeared along with Armor's General Counsel Santhia Curtis. (ECF No. 246.) Riordan reported (and Curtis confirmed) that he would not continue as Armor's counsel. Curtis then asked for three weeks to a month to find his replacement. (ECF No. 256 at 6-7.) Mindful of the need to avoid delay and Wesley's desire to preserve the upcoming mediation, the Court instead agreed to allow Armor a bit more than two weeks (16 days) to bring the situation to a close. As confirmed in its minute order, the Court required that "on or before January 20, 2023, Armor must either retain replacement counsel or resolve its issues with Riordan." (ECF No. 246 at 1.) The order also specifically detailed the consequences if Armor failed to act within the deadline; "[i]f Riordan does not agree to continue on the case and replacement counsel has not appeared by January 20, 2023, the Court will enter default against Armor." (*Id.* at 2.)

Armor did not comply. It neither reached agreement with Riordan on his outstanding fees nor retained replacement counsel by the January 20 deadline. Riordan waited another ten days and then, on January 30, 2023, filed a proposed order granting his motion to withdraw. (ECF No. 247.) Later the same day, Wesley moved for entry of default. (ECF No. 248.) Consistent with its

prior warning, the Court entered an order granting Riordan's withdrawal and Wesley's default requests the next day, January 31, 2023. (ECF No. 250.)

More than a week later, on February 8, 2023, attorney Francesco Zincone of Armas Bertran Zincone appeared on behalf of Armor and moved to vacate the Clerk's entry of default, invoking (the inapplicable) Fed. R. Civ. P. 60(b)(1). (ECF No. 252.) With that motion pending, the parties attempted the long-scheduled mediation. But to no avail. On February 21, 2023, Wesley filed a one-page status report informing the Court that "a good faith mediation did not take place." (ECF No. 257.) The next day, he submitted a brief opposing the motion vacate. (ECF No. 258.) Armor filed its reply on March 1, 2023. (ECF No. 260.)

## LEGAL STANDARD

Although Armor invokes Rule 60(b)(1), its motion for relief from default is actually governed by Fed. R. Civ. P. 55(c). Rule 55(c) provides that a court "may set aside an entry of default for good cause." The Seventh Circuit has explained that "[i]n order to have an entry of default vacated, [Rule 55(c) requires] the moving party [to] show: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 809-10 (7th Cir. 2007) (citing *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994)). While Rule 60(b) requires the same showing, courts apply the test "more liberally [] in the Rule 55(c) context." *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989).

The precise meaning of "good cause" for purposes of Rule 55 has drifted in and out of focus over the years. In *Sims v. EGA Products, Inc.*, 475 F.3d 865, 868 (7th Cir. 2007), the Seventh Circuit suggested that "Rule 55(c) requires 'good cause' for the judicial action, not 'good cause' for the defendant's error; as used in this Rule, the phrase is not a synonym for 'excusable neglect.'" Put another way, "good cause" means a good reason to set aside default, and "does not necessarily require a good excuse for the defendant's lapse." *JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780, 792 (7th Cir. 2015) (citing *Sims*, 475 F.3d at 868). Other Seventh Circuit cases appear to take a different approach. In *Cracco v. Vitran Express, Inc.*, for example, the Court stated: "To have the entry of default vacated, [a defaulted defendant] *must* show that *it* had good cause for [its actions]." 559 F.3d 625, 631 (7th Cir. 2009) (emphasis added). This implies that "good cause" *does* mean a good excuse for the defendant's error. Similarly, in *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Medical Supplies, Inc.*, the Court described Rule 60(b) as requiring a showing of

"excusable neglect" and then explained that the same standard applied, albeit more leniently, under Rule 55(c). 961 F.3d 942, 949 (7th Cir. 2020).

Competing interpretations notwithstanding, it is clear that the determination of "good cause" "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *see also JMB*, 799 F.3d at 792 (noting the absence of a good excuse for the defaulted defendant's inaction but nonetheless vacating default on general fairness grounds); *Yan Fang Jiang v. Hannon Grp., Ltd.*, No. 14-CV-309-JPS, 2015 WL 541678, at *3 (E.D. Wis. Feb. 10, 2015) (vacating entry of default where the defendant had "not shown good cause for its default, but . . . little if any prejudice [existed] and the overall harm appear[ed] minor").

## ANALYSIS

This case turns on whether Armor can demonstrate "good cause" under any reading of Rule 55(c). The company argues that it can show "excusable neglect" because it missed the Court-ordered deadline to retain replacement counsel due to a clerical error. (ECF No. 254 at 2.) The Court disagrees. The alleged "clerical error" Armor identifies does not excuse its blatant violation of this Court's order. And despite an extensive sweep of the briefs and record in this case, the Court sees nothing that might establish good cause for its own judicial action. The equities, therefore, do not weigh in Armor's favor either. As a result, its motion to vacate entry of default will be denied.

### I. Armor's Attempt to Blame Its Predicament on a Calendaring Blunder Is Disingenuous and Does Not Establish Good Cause to Vacate Default.

According to the affidavit of Armor's Assistant General Counsel Francisco J. Castro, this whole ordeal is the result of an accidental failure to update the company calendar with the Court-ordered deadline to retain replacement counsel. (ECF No. 254 at 2.) Immediately after the January 4, 2023 status conference in this case, General Counsel Curtis emailed Castro and informed him that Armor had 16 days to either resolve its differences with Riordan or hire a replacement. (*Id.*) But according to Castro, due to some unidentified "neglect and oversight of counsel, the deadline was not calendared." (*Id.*) He says virtually nothing else about what transpired between January 4 and February 8, 2023 to justify Armor's inaction.[1] His affidavit indicates that he made a couple

---

[1] Armor argues in its brief that Castro spent the two weeks after the January 4, 2023 hearing attempting to reach a resolution with Riordan. (ECF No. 253 at 2.) But Armor's only support for this claim is Castro's affidavit, and that affidavit is silent on the issue. (ECF No. 254.) Neither Castro nor Armor has produced any evidence about what

business trips to New York, but this was *after the deadline to retain counsel had already expired*. (*Id.*) And apparently, at some point between January 4 and 30, 2023, Armor terminated Curtis and may have even dissolved its in-house litigation department. (ECF Nos. 253 at 2-3; 254 at 2; 258 at 6.) On the basis of this sparse record, Armor seeks to vacate the entry of default. The Court will not oblige.

First, Armor's attempt to frame its failure as one of calendaring treats a symptom as a cause. Armor made a conscious, corporate decision not to pay its attorneys and perhaps dissolve its in-house litigation department. As one would expect, short on legal advisors, legal matters slipped through the cracks. The calendaring faux pas was, therefore, the foreseeable outcome of a risky cost-cutting maneuver. This does not establish "good cause" under Rule 55(c). *See Zuelzke Tool & Eng'g Co., Inc. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 229 (7th Cir. 1991) ("[A] deliberate and willful abdication of [a litigant's] legal responsibility to protect its own interests in the litigation" does not establish good cause.). Default is used "to ensure that litigants who are vigorously pursuing their cases are not hindered by those who are not." *Swaim v. Moltan Co.*, 73 F.3d 711, 716 (7th Cir. 1996) (internal quotations omitted). At this point, it is hard to characterize Armor's conduct as anything but inexcusable neglect leading to unnecessary delay. *See JMB*, 799 F.3d at 792 ("[A] corporation [is not] entitled to grant itself a continuance by firing or failing to pay its lawyers.").

To be clear, the Court would treat Armor more magnanimously had its default actually arisen from a clerical worker's failure to process a complaint or other pleading. But what occurred here is far from the proverbial paperwork mistake. The default came after Armor had *twice* failed to pay its own lawyers, *twice* causing them to seek Court-permission to withdraw, and after the Court *twice* alerted Armor to the potential for default if it did not resolve the situation promptly. The Court even expended extra effort to ensure Armor had notice of its attorneys' motions to withdraw and understood the consequences of failing to obtain replacement counsel. The Court specified the consequences in writing in its order setting the status conference, orally at the hearing (which it required Armor's General Counsel to attend), and again in writing in the minute order. Failure to comply may have constituted neglect, but it is not excusable.

---

actions Castro took prior to the deadline to retain counsel short of acknowledging his receipt of Curtis' initial email. (*Id.* ¶¶6-7.)

The transcript of the status conference held on January 4, 2023 confirms the great pains the Court took to impress upon Armor the seriousness of its situation and the possible repercussions of inaction. (ECF No. 256.) After summarizing the case's long procedural history, the Court informed Armor's General Counsel that it would not allow the company's payment disputes to jeopardize the upcoming mediation. (*Id.* at 5.) General Counsel Curtis acknowledged the Court's concerns and asked for 21 to 30 days to recruit new counsel, while foreshadowing further delays by noting that it would "take time to get [replacement counsel] up to speed." (*Id.* at 7.) The Court expressly rejected this timeline. (*Id.*) Instead, in recognition of the time and money the other parties had invested into the case and their right to meaningful mediation, the Court gave Armor 16 days to either resolve its issues with Riordan or find a new lawyer. (*Id.* at 7-8.) It also specifically stated that noncompliance would result in an entry of default. (*Id.* at 8.) Despite all of this, Armor let the deadline pass in silence. That was an egregious violation of a Court order, regardless of what calendaring snafus may have occurred.

And even assuming Curtis and Castro forgot to mark the Court-ordered deadline on their calendars, the matter of legal representation could not have been far from their minds. Between the January 4, 2023 status conference and January 31, 2023 entry of default, both attended two hearings in other cases in this district, and both hearings specifically concerned Riordan's imminent withdrawal. *See Barrett v. Armor Corr. Health Servs., Inc., et al.*, Case No. 2:20-cv-1128-WCG, ECF No. 146 (Minute Order from January 10, 2023 hearing before Judge Griesbach in which Riordan is permitted to withdraw and Castro states that Armor is "in the process of retaining counsel"); *Estate of the Unborn Child of Jennifer Jawson, et al. v. Milwaukee Cnty., et al.*, Case No. 19-cv-1008-LA, ECF No. 234 (Minute Order from January 24, 2023 hearing before Judge Adelman in which Riordan is permitted to withdraw and both Curtis and Castro are present). Surely these regular reminders of their pending legal troubles proved a sufficient substitute for a calendar tickler.

Under these circumstances, considering the breadth and regularity of the Court's warnings, Armor cannot establish excusable neglect through a calendaring mistake.

II.     **The Balance of the Equities Does Not Favor Vacating Entry of Default.**

Rule 55(c) also permits the Court to consider broader, equitable principles and vacate default if it finds good cause to do so, regardless of whether the defaulted party has a good excuse for its behavior. *See Sims*, 475 F.3d at 868. But even this more lenient standard does not help

Armor.  As the Seventh Circuit has noted, "the sanction should fit the offense."  *Id*.  When misconduct is deliberate and prejudice significant, equity weighs against vacating an entry of default.  *Id*.  Armor's default resulted from a willful decision not to pay its attorneys.  It reaped the benefits of that "strategy"—reduced costs and extended deadlines.  Now it wants the Court to relieve it of the consequences.  Its story, however, is neither sympathetic, nor indicative of good cause.

        It bears repeating that this action began nearly four years ago and involves serious allegations of medical malfeasance at the Milwaukee County Jail.  The plaintiff, who suffers from schizophrenia, claims that he decompensated as a direct result of Armor's constitutional violations.  Even if his case would ultimately falter, it is not appropriate for a sophisticated litigant like Armor to repeatedly waylay him on the road to justice.  Yet the company has done just that.  The Court has already recounted Armor's history of willful misconduct and will not do so again here.  Suffice it to say that "equity" does not afford parties carte blanche to flout Court orders and inconvenience their adversaries.  *See JMB*, 799 F.3d at 792 ("[A] corporation [is not] entitled to grant itself a continuance by firing or failing to pay its lawyers.").

        Moreover, Armor has not identified any strong equitable factors militating against default.  *See id.* at 793 (reversing an entry of default judgment because the defaulted party was subjected to "[a] multimillion dollar judgment on a specious legal theory"); *Sims*, 475 F.3d at 868 (reversing an entry of default where the defaulted party's "misconduct was negligent . . . rather than deliberate); *see also Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 367 (7th Cir. 1983) (affirming district court's denial of motion to vacate entry of default where the defaulted party's only excuse was attorney illness).  Castro's affidavit is light on details and offers nothing that rises to the level of good cause.  In fact, the record is essentially devoid of any evidence concerning the actions Armor and its in-house representatives took between January 4 and February 8, 2023.  That, itself, is problematic.  "If a party has it peculiarly within his power to produce evidence that would elucidate a matter in issue . . . the fact that he does not do so permits an inference that the testimony or records, if produced, would be unfavorable or not supportive."  *SEC v. Benger*, No. 09 C 676, 2014 WL 2198325, at *5 n.7 (N.D. Ill. May 27, 2014) (citations omitted).  The Court will not invent circumstances to support a good cause finding.

        Finally, the record shows that Armor's conduct seriously prejudiced other parties.  It is now well-established that the company's habit of failing to pay its attorneys has prolonged this

case. Additionally, because Armor's motion to vacate entry of default could not be fully briefed ahead of the scheduled mediation, the parties were forced to mediate from a position of ignorance, uncertain whether Armor would remain an active participant in the suit. This was precisely the outcome the Court was trying to avoid. The January 20, 2023 deadline to obtain replacement counsel was set to allow, in General Counsel Curtis' words, that new attorney "time to get up to speed." But because Armor did not replace Riordan until February 8, 2023, new counsel had less than a week to prepare for mediation, some of which had to be spent fashioning a motion to vacate the entry of default against his client. That likely contributed to the dysfunction at a mediation that went so poorly, the participants could not even agree on what language to include in their subsequent status report. (ECF No. 257.) At this stage of the proceedings, the various parties (those that have been paying their attorneys, at least) have expended considerable funds and deserved the opportunity to engage in good faith settlement negotiations with adequately prepared representatives. That Armor appears to have interfered with this process demonstrates prejudice, not just to Wesley, but to the other co-Defendants as well. This waste and the associated prejudice to the other parties hardly weighs in favor of finding good cause. *See JMB*, 799 F.3d at 792 (weighing prejudice to other parties when considering a motion to vacate entry of default).

In the end, nothing in Armor's motion or accompanying papers are sufficient to convince this Court that good cause to vacate entry of default exists within the meaning of Rule 55. Rather, the record shows a willful course of conduct that has led to continued delays in an already long-pending case. The Court is mindful of the Seventh Circuit's "articulate[d] . . . policy of favoring trial on the merits over default judgment." *Cracco*, 559 F.3d at 631; *but see O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1401 (7th Cir. 1993) ("[T]his circuit no longer follows the earlier doctrine disfavoring defaults."). But given the extreme circumstances of this case, in which Armor violated a Court-ordered deadline, after multiple warnings, including a specific discussion with its in-house counsel, default is justified. The Court has a duty to protect its own docket and other parties from tactics that lead to unwarranted delays. *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1117 (7th Cir. 1994) (expressing greater tolerance for use of default when one party is hamstringing the litigation). Armor was on clear notice of the Court's deadline and the consequences of non-compliance. It nevertheless decided to proceed according to its own timeline. As the Seventh Circuit has often cautioned: "Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won." *United States v.*

*Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir. 1994) (quoting *Nw. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 663 (7th Cir. 1994)). The motion to vacate entry of default is, therefore, denied.

## CONCLUSION

In the last fifteen months, two different law firms have withdrawn from representing Armor based on its failure to pay them. On both occasions, the Court allowed the withdrawals but only after alerting Armor that it needed representation and warning that a lapse in representation might result in Armor being held in default. On the latest occasion, Armor failed to heed the Court's warning, violated a court-ordered deadline, and found itself in default. Because it has not come forward with evidence sufficient to convince the Court that good cause exists to set aside the default, its motion to vacate entry of default is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Armor's Motion to Vacate Clerk's Default, ECF No. 252, is **DENIED**.

Dated at Milwaukee, Wisconsin on March 24, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge